I'm going to focus primarily on one issue, and that is the issue of child find, which is the key factor in this case, and from which the other issues necessarily flow. The IDEA in section 300.111 states that child find is the purpose of which is to ensure all children with disabilities are identified, located, and evaluated. There's a further clause in that provision that says regardless of the severity of the disability. In this situation, we had a child that had a number of things that should have triggered the district to when do those triggers cause the district to start fulfilling its obligation. In this child's case, there were diagnoses of ADD, bipolar, autism, anxiety, depression, oppositional defiant disorder, and dysthymic disorder. These weren't suspected disabilities. These were, in fact, disabilities. Yet the district failed to exercise a child find obligation and evaluate this child in all areas of suspected disability and provide him an IEP and address his needs. The district could also have, from the experiences of its staff, noticed that there was a suspected disability. There were multiple disciplinary referrals. There were disruptions throughout the classroom, interfering with the education of other students, and there was removal of the student to disciplinary placements for 45-day periods. Those should have triggered the child find obligations of the district. Or they could have noticed that the child was struggling academically. All of these behaviors were interfering with his ability to academic progress in different areas of his program. This was a student with an 88 IQ, so he's in the low average range and should have been progressing alongside his peers and doing reasonably well and was not. They could have noticed that he was being resistant to school. They could have noticed his self-injurious behaviors that were occurring in the classroom. All of these things should have triggered their child find obligations. Or perhaps when they realized they were restraining him, or restraints that eventually caused a serious injury of a broken scapula, perhaps that should have triggered their child find obligations. This is a middle school child. How many middle school children are being restrained in their classrooms if it's not disability related? Child find is not a high bar to be triggered. It only requires a suspicion of a disability. And all of these facts in the case should have caused the district to exercise that child. The district seems to, in its defense here, point the finger at the parent and to some degree point the finger at the disabled child. This is a parent who had two disabled children at home. This is a parent who was new to the special education system and had not actually entered into the special education system with his child. And the district pointed the finger at the parent throughout this as her being responsible for their delays in moving forward with the evaluations. There's clear case law on this. RMM versus Minneapolis Public Schools that's in our brief that highlights that this is not a parent's responsibility to ensure her child is located and identified for purposes of special education. The other issues flow from this issue and whether or not the court sides with the parent on this issue. The parent now has her child out of state. She was driven from the state, perhaps Judge Wilson will recall, I was here about a month ago where a parent moved from the district that was not meeting her child's needs. That's the third case I've had from Texas in front of this circuit where the parents have moved from the district because their child's needs weren't being met. I hope, I don't want to interrupt your train of thought, but I hope you're going to save some time to talk about the statute of limitations issue. Yes, I will talk about the statute. You don't have to now, I just want you to save some time for it. On the statute of limitations issue, Judge Smith, Texas at the time of this case had a one-year statute of limitations. The statute of limitations under the IDEA allows a district to opt for a one- or two-year statute of limitations. Texas had at this time opted for the one-year statute of limitations and since then has adopted the two-year statute of limitations. Well, but during the time we're talking about, it's a one-year statute of limitations. Do you agree with that? Yes. I wanted to follow up on Judge Smith's questions. You've presented all this evidence sort of as a cumulative whole, but isn't it important to lay this out over a timeline? And so more specifically, my question would be, what of all the things you've cited in terms of the behavioral issues and the other things that purportedly put the school district on notice occurred within that year from December of 2018 back to December of 2017? I think, Judge, your question confuses a little bit about the issue of statute of limitations because the statute of limitations is about the claims that can be attached, right? But the facts that some of these facts are outside that one-year statute of limitations period, but should have been and contributed to as they accumulated things that should have triggered that child find obligation. As early as 2017, there was that ADHD diagnosis, right? So what is your earliest trigger for the child find obligation? I think the earliest clear one without trying to interpret anything is that ADD diagnosis in 2017. January of 2017, the letter from the psychologist. Yes, yes. Right? So that asked for a 504 evaluation. Yeah. That was a notice to the school district that the child had a disability. And under the obligations at that point, they had an obligation to evaluate the child for special education purposes in all areas of suspect. Anytime there's a 504 plan for someone with ADHD, there's also a trigger to look at special ed. I mean, there's a whole bunch of kids with ADHD diagnosis who aren't in special ed. There is a requirement under both 504 and the IDEA to evaluate the student. The evaluation process requirements are a little different, but the requirement under the IDEA is that if there is a suspected disability and ADHD is recognized as a disability, then that IDEA evaluation process triggers. Now they don't. The answer to my question is yes. Yes. If someone's a doctor sends a letter saying student X has ADHD, he needs a 504 plan. That also requires the school to look into whether there's an idea issue. Yes. And the purpose behind that, Judge Costa, is that they need to identify what that child's educational needs are, right? The diagnosis of ADHD doesn't describe what that child's needs are. But they did that. I mean, they did it under section 504, but they came up with a plan, correct? They did come up with a plan, but they did it without the evaluation. They did it with the diagnosis. Where is your support in the law that an evaluation is required? Per Judge Costa's question, I assume the answer is yes. 504 triggers IDEA. IDEA section 300.111 requires that they evaluate the student in all areas of suspected disability, regardless of the severity of the disability. They don't have to classify the child, right? The child find trigger happens, and they can evaluate him and say, we're not going to give him an IEP. It doesn't warrant special education services. We're going to give him a 504 plan. That's a possibility. And that's what if what case law says that with an ADHD diagnosis, there's a trigger for IDEA evaluation. There's not going to be case law on that, Your Honor, because everything is specific to that student, that particular student's needs. Oh, so you're not saying it automatically requires an IDEA evaluation, an ADHD diagnosis. I'm saying that the regulations require that evaluation. If there is a known disability, they certainly require an evaluation under the IDEA. They don't require that he be classified with an IEP if that severity of his disability doesn't rise to that level. Here, had they done that with the ADHD, at the time of the ADHD evaluation, they very likely would have come across these other diagnoses and these other needs that he had. But that was not done. One question about the ADHD. I thought when he came back in fall of 2018, I know he had additional diagnoses, but I thought the ADHD diagnoses was withdrawn in August, I think September 2018. I don't know if withdrawn is the right word. I think that he was further diagnosed, and these disability diagnoses sometimes have overlapping symptomology, and some of that came out in a later evaluation of the student by private evaluators. And I'll point out, too, that these evaluations were all early on only conducted by the parent, and the parent is seeking help on her own in bringing that to the school district. And that was not her obligation at all. They were required to do this educational evaluation for the student. All right, so I'm a little confused. Back to the statute of limitations before you go forward. The January 2017 letter. Yes. If we go with the December 2018 start date, so to speak, and go back a year, that's outside the one-year statutory period. So how does the January 17 letter form a basis for a claim here? There's another element to the statute of limitations, and that is that a school district is required to provide the parent a procedural safeguard notice whenever a special education issue first arises. In this case, the parent was not provided that. That would have provided the parent notice of how to make a referral. Do they have to provide that under a 504? No, that's under the IDEA. But it's a required— Your position is that that letter in January 17 makes it automatic that the school district had to provide the procedural— Yes, it would have triggered this child find obligation and all of their IDEA obligations requiring certain notice to the parent, including the procedural safeguard notice, notice of evaluations, consent for evaluations, and all of those steps that follow in approaching the IEP meeting. If you set that aside, January of 17, when's the next trigger going forward that the child find obligation arose? There were multiple 504 meetings when it doesn't arrive. They accumulate. I wouldn't say they just, you know, one event necessarily triggers the child find. These things were cumulative. So, throughout that two-year period of time, as the student's academics declined, as the student's behaviors were going downward, as the restraints were increasing, as suspensions increasing, as additional diagnosis, all of that— The 17-18 year is when he goes to the virtual charter school, correct? Yes. In other words, he's pulled out of the school after that spring semester of 2017. That is correct, but that does not absolve them of locating and identifying the student as a student with a disability because he was still a resident in the district and their obligations apply to all the students who are residents in the district. So, the school district, even though he's not enrolled in the school, they've got to continue to track him at the next school because obviously now we know he came back the following year, but they don't know that then, that he's ever going to come back. They have an affirmative duty towards every student who resides in that district to locate and identify them if they're suspected of having a disability. Private school students also? Yes. All right. So, it's cumulative through this time that he's not in school. When's the next—I mean, maybe I'm just not even speaking the right language, but when's the next trigger for the child find? When he enrolled back in school, the parent provided additional information. She provided— September of 2018. Yes, provided more information about some hospitalizations he had. She provided information about his performance at the virtual school. I think it was within two weeks of him arriving at school, he had his first disciplinary incident, and then it just accumulated after there at a more severe level until— We're not having any problems in school. I mean, everything seems to be going well. I mean, they have this 504 meeting, right? Yes. Okay. So, then we get into October where we have the incident of October 30. We have the two disciplinary incidents before that. The district court found that those two incidents were basically what eighth graders do, and being the parent of a senior in high school, amen. So, again, we get into October. We're at the end of October. I don't think there's any real dispute at that point because the parents asked for the evaluation on November 1, right? Yes. Okay. So, what deference are we to give the district court for the findings that it set out in its opinion? I don't believe any deference should be given. So, we're not giving the fact findings clear error? I believe it is error in that— But is it— I mean, are we evaluating it under clear error, or are we looking at everything anew or somewhere in between? I think it's clear error, Your Honor. I think that this student displayed a pattern of behaviors. He had a pattern of diagnosis. He had escalating behaviors that resulted in injury to himself, severe injury, a broken bone. I think that it just accumulated as it went on to the point of a tragedy. And I'll share this with the court that shortly after the hearing ended, they did sit down. They did classify him, and they still didn't meet his needs, and the parent ended up moving, but— Your initial time has expired. Thank you, Your Honor. Ms. Robertson? Good afternoon, Your Honors, and may it please the court. I am Bridget Robinson, and it is my honor to be in this magnificent en banc courtroom representing the Coppers Cove Independent School District. This court should affirm the district court's well-reasoned order rendering judgment in favor of the Coppers Cove Independent School District. This case was brought by the plaintiffs under the Individuals with Disabilities Education Act, or the IDEA. As such, this appeal is the third review of a parental request for reimbursement of private educational costs when the parents unilaterally withdrew the student from the school district prior to the school district even having an opportunity to convene an ARD meeting to review a full individual evaluation of the student and determine placement. Following a three-day hearing, a state administrative special education hearing officer denied the parents' request for reimbursement of the private school costs. Following rulings on several motions, including motions which disposed of some parties and causes of action, the district court issued a thorough, well-reasoned, and well-supported 28-page order in which the district court also denied the parents' request for reimbursement of private school costs. The parents' claims were properly denied at both levels of the proceedings below. Which level do we defer to? I mean, the district court is really in the same situation we're in. The district court's reviewing this administrative state hearing transcript. You know, it's not hearing from witnesses live, whereas the state hearing officer is. So is it the state hearing officer who heard the testimony to whom we owe deference, or is it the district court to whom we owe deference? On fact findings. Both, Your Honor. Initially, the district court's review of the special education hearing officer's decision is virtually de novo, as this court has articulated. Of course, as this court has also articulated, a party attacking the school district's educational program bears the burden of demonstrating noncompliance with the IDEA at all times. Further, a presumption exists in favor of the school district's plan for educating the child. The party challenging an educational placement must show why the individualized education program and placement were insufficient under the IDEA. I understand the burdens there, but I'm asking more about these factual issues, like when the district should have known that they should have evaluated for special ed. Um, on that, you say we've deferred to both. I'm just trying to figure out how that works. Our case law, I find it a little, it's a little unclear who that deference is owed to. Normally, it'd be the fact finder who actually hears witnesses, because we're not able to do that, right? We're sitting here in this courtroom just reading a bunch of paper, and then listening to you all. Yes, Your Honor. And I believe even though the vernacular applied to the deference owed both to the special education hearing officer by the district court, and by this court to the district court, are slightly different, they result in the same basic standard of review. As this court has articulated for the district court, they apply deference, but review virtually de novo, which means, of course, that due weight is given to the state administrative proceedings, but particular deference is given for the hearing officer's administrative findings are thoughtful and careful, as in the case at Barr. While legal issues are reviewed de novo, factual findings are reviewed for clear error. And this court, in applying those same deferential standards, albeit again with slightly different language, have found that the factual findings are reviewed for clear error, not only the factual findings by the district court, but the special education hearing officer. Under clear error review, a factual finding may be reconsidered only when the court is left with the definite and firm conviction that a mistake has been committed. Counsel, so it's kind of a mixed question to build on Judge Costa's point, right? So, I mean, it's a mixed question of fact and law, and so do the facts predominate here? Does the law predominate here? I mean, that's what I guess some of our case law talks about. So, is the triggering of the child found obligation an issue of fact as to when did that happen, or is it an issue of law? When do we apply the IDEA obligations to the facts of a particular case? Does that make sense? Where are we here? I believe I understand your question, Judge Wilson. If I misdirect you, please redirect me. I assure you I'll be lost on my own. You're helping me find the way. Your Honor, in this particular case, it was a mixed question of fact and law. However, if you look just at the factual findings of the district court, which are fully and adequately supported by the special education hearing officer's decision, then the school district would prevail. Similarly, if you look at it merely as a legal issue, the school district still prevails because there simply was not enough information to establish that this was a student with a disability who needed a special education evaluation, and let me discuss that further. In response to plaintiffs' issues 2, 3, 4, and 5, rephrased by the school district as the second issue on appeal, both the hearing officer and the district court correctly held that the school district met its child found obligations. Further, the district court correctly held that the school district did not violate the IDEA, not only because the school district met its child found obligations, but because the failure to determine M.G.'s eligibility prior to his withdrawal from the school district did not deny him a free appropriate public education or a FAPE. Moreover, any delay in proceeding immediately with the full individual evaluation was attributable to plaintiff's failure to sign the consent documents. Additionally, as the district court correctly held, the school district timely conducted the full individual evaluation and the full individual evaluation findings were appropriate. Of course, as the courts have observed, the child found requirements do not demand that school districts conduct a special education evaluation of every student experiencing difficulty in the school setting. In this case, the Coppers Cove Independent School District had no reason to suspect M.G. was a student with a disability in need of special education and related services. On the contrary, the record establishes M.G.'s successful performance and progress in academics, behavior, and social skills in response to a general education instruction and 504 interventions during the applicable time period. Let me ask you, opposing counsel said in response to my question that the letters diagnosing the student with ADHD triggered an evaluation for special ed per the regulations. Do you agree with him on that? I do not agree with that, Your Honor, and neither did the special education hearing officer or the district court, and those findings are correct. Let's discuss that particular issue in more detail. Even if January 24, 2017, when the letter was written, albeit not yet tendered to the school district, was within the applicable one-year statute of limitations, which it was not, as correctly found by both the special education hearing officer and the district court, it did not put the school district on notice that M.G. was a student with a disability in need of special education services or even an evaluation. The letter itself is four sentences long. It can be found in the Record on Appeal at page 1807. The first two sentences of that letter contain only the name of the psychologist, and the second sentence is the fact that she is a psychologist. The third and fourth sentences in their entirety read that M.G., quote, was diagnosed with attention deficit hyperactivity disorder combined to top in January of 2017. He would benefit from the development of a 504 plan to assist with his educational activities, end quote. Not only does this letter not indicate that M.G. had any disability which created an educational need for special education services or related services, it, to the contrary, specified that there was a request for a section 504 evaluation. That section 504 evaluation was conducted, and it was begun immediately upon the tendering of this letter to the school district toward the end of January 2017. As the district court correctly held, the request for a section 504 evaluation or even a plan following an evaluation does not put the school district on notice that there is a request for a special education evaluation, and indeed, there was not a request for a special education evaluation. But could it trigger the child fund obligation? No, Your Honor. Not when the request was for a section 504 plan. It would only trigger child fund if there was information showing that there was an educational need for a special education evaluation. That is, the letter does not have to specifically say we need or the student needs special education and related services, but there has to be some indication that the student not only has a disability, but as this court has held a plethora of times, that there is also an educational need for a special education evaluation. That was simply not present in this case. So, counsel, fast forward to September of 2018 when there's this questionnaire that the parent filled out. I guess it's a questionnaire, that's what I'll call it, but questions and responses about how the student is doing and the district court actually noted it when the district court said, well, they met in September of 2018 and there's no problems at school. That's what the parent reported. Well, the questionnaire goes into more detail than that and actually talks about some issues. So, is there a child fund obligation that arises at that point when the student comes back to the school district? In this particular case, Your Honor, to boil it down to the facts known to the school district and observed and what was reported by the parents, in this case, no, and let's talk about the reason why. That is because not only as you have accurately noted, Your Honor, did the parent herself state that there were no issues occurring in the school but there had been nothing that had happened at the school during that school year or during the fifth grade or sixth grade school year when MG actually attended the Copper's Cove Independent School District to indicate that there was a need for a special education evaluation. But the parent comes in at the beginning of the eighth grade year and said when he was in seventh grade, he was hospitalized twice and he, I think, failed several classes. I mean, it sounds like basically that seventh grade year was a bit of a disaster and so the parent is telling the school district that around the time the school year begins in 2018, right? I mean, is that enough? Your Honor, there were no documents provided that— They have to provide documents? Well, certainly, they have to establish that there was indeed a hospitalization. It's not enough for a parent to say my child was hospitalized? Typically, that is not sufficient, Your Honor. Students can be hospitalized for a great range of issues that have nothing to do with educational need and, in fact, they usually are. Usually, when there's a hospitalization of a middle school student, it is because he fell from a tree. But this was psychological—I mean, I'm losing the right word—psychiatric hospitalization, was it not? That was not substantiated or supported. Was it communicated? Your Honor, that was the assertion and the school district followed up on that and tried to obtain more information, just as the school tried to obtain more information about whether the student actually attended a virtual online academy during his seventh grade year. He took the star, right? During seventh grade, again, that was reported by the parent. However, when the school district made numerous efforts to try to obtain records from Texas Virtual Academy, the online academy that the parent reported the student had attended, the virtual online academy reported that it had no records for the student. Therefore, the school district was never able to verify that information communicated, but as well as the additional information that was communicated, the school district made every effort to follow up on that and try to obtain records that would support, one way or another, anything that would show there was an educational need for this particular student to have further evaluations. But parents is also filling out this questionnaire from the school district that says he gets angry, he has trouble with discipline, he can be a very aggressive when disciplined and had issues at home. I mean, this is coming from parent, right, in response to this questionnaire. Again, does that trigger the child found obligation? This is what, September of 18? Your Honor, the school district looks at the totality of circumstances, not only what is reported by the parents, but what is observed at the school district, what the teachers report, what the administrators report. What does the law require, I guess is what I'm getting at. Obviously, I think you are following me, but was there clear error here in the district court's findings? There was not clear error, Your Honor. Even in the face of all these things I'm detailing with you? Your Honor, again, many of those things that were reported by the parent were not substantiated or supported by any records, and when the school district tried to obtain any documentation that would support those assertions, the response from the providers was that no records existed. You're talking about the charter school? Yes, Your Honor. However, the school district did take all of that into account, even without supporting documentation, and reviewed in another Section 504 meeting all of the diagnoses and all of the accommodations that were being provided for the student and evaluated whether further accommodations might be helpful in addressing the issues reported by the parents. In response, the school district did modify the Section 504 plan. They added additional diagnosis, as you correctly and accurately noted earlier, Your Honor. The diagnosis of attention deficit hyperactivity disorder was no longer found to be valid, not only as reported by the parents, but as observed by the school district. However, everything the parents did report, such as oppositional defiant disorder, were added to the Section 504 plan and addressed. What case law says that information the school receives from a parent has to be corroborated or verified to trigger the reasonably suspects requirement for child fine? Your Honor, if you look at the special education cases which have been rendered by this court from as early as Richard R.R. versus El Paso ISD through Richardson ISD versus Michael Z., Teague versus Todd, Adam J. versus Keller Independent School District, looking at all of those cases, this court has always held that it has to be a totality of circumstances. The school district was not. Right, but let's say a parent comes in, moves to Texas, moves to Houston and says, oh, my son's going to start here. He's been in special ed for five years. He has incredible learning difficulties. His IQ is very, very low. You're saying there'd be no duty to the school until that's verified with records? No, Your Honor. I'm not saying there would be no duty to the school. And, in fact, in this case, as mentioned, the school district took all of that into account. All of the reports from the parents assumed it to be true and incorporated that into the student's Section 504 plan. You kept seeming to be saying that, well, those might be serious about the hospitalizations, but they weren't. So the verification isn't what you're hanging your hat on. No, Your Honor. Again, the school district took all of that into consideration, accepted the parent's statements, and incorporated additional diagnoses in the student's Section 504 plan and modified accommodations for the student based merely on the parent reports. However, based on the behavior exhibited at the school district, there was no information that MG was not performing well. He was failing a class at that point, wasn't he? I'm sorry, Your Honor? He was failing a class at the time of that 504 meeting. Your Honor, he had only failed one class. It was English Language Arts, and only for the second six weeks. I see I am out of time. May I continue to answer your question, Your Honor? Yes, please go ahead. Thank you. However, he had passed all of the classes for the first six weeks, and as the campus principal testified, it was remarkable. And MG did remarkably well maintaining passing grades for the first six weeks, and only slightly failing one English Language Arts during the second six weeks, especially when considering that this was a student who had been, at best, homeschooled the prior school year, and may not have received any educational opportunity at all during that school year when there was nothing to reflect that he actually even attended the Virtual Online Academy. That alone was insufficient. For all those reasons, Your Honor, as well as those in the brief of the school district, we respectfully request that this court affirm the decision of the district court. All right, thank you, Ms. Robinson. Mr. Cuddy? I'd like to draw the court's attention . . . First, let me ask you, what will the record show us, if anything, about any kind of, I'll use the word, verification from the Online Academy, as Ms. Robinson has referred to a couple of times? Your Honor, I'm not sure there is anything that was confirmed during the hearing. I didn't do the hearing myself, but I don't believe that's there. I don't have an explanation for that. My client reports that she had him go to the Online Academy. All of it was done online, reported online, and why the school district couldn't retrieve things from that program, I don't know. Couldn't your client have retrieved the records? If it became an issue at the hearing, they're saying the kid didn't actually go to that school, I would think you'd get . . . I believe we made an effort as well, and I'm not sure about the administrative process at that Online Academy, but it was definitely a problem. But on that note, I'll point out that this was a student who was of compulsory school age and a resident of their district, and if there was a problem with that Online Academy, as they allege that he might not have even attended, it was their obligation to make sure he was being educated that year. Not an issue in this hearing, but . . . There's homeschooling. There is, and even then . . . It's not like even this charter . . . it seems to me this charter school, if it even exists, it's almost like a hybrid. You do some homeschooling, you do . . . and I know there's programs. And if he had homeschooled, they would have had to verify that too. It was their obligation to make sure he was attending a program. Well, and they tried, and there was no record of the Academy. After the fact, they tried. I want to bring the court back to Section 300.111, the Child Find Obligation. It is not any obligation on the parent to do anything. The parent cooperates with the process. She fills out forms. She brings things of concern to the district, but it's their entire obligation to locate and identify the child. This court ruled on a case, Krawitz, maybe two years ago, and the parent had brought the student back to the district after a period, I think it was either homeschooling or virtual academy, and notified the district upon enrollment that she had been psychiatrically hospitalized, and they did not trigger the Child Find Obligation at that point. The court ruled that was . . . that should have been a trigger for the Child Find, and that four months getting their evaluations done was too long and too long of a delay. Um, there is no requirement that a parent say, I want my child referred for special education services. I want my child to have an IEP. The only obligation . . . there's actually absolutely no obligation on the parent to inform and request IEP or special education services. So, the letter from the doctor, the ADHD letter that said, hey, he's got a disability, that was a trigger. That should have been a trigger. And there's no necessary request or ability of people outside . . . necessity of people outside the school district to be able to distinguish between 504 or IDEA, certainly not a lay parent. Back to the procedural safeguard notice.  At any time that an IDEA obligation is triggered, which is of course Child Find, even at 504 meetings, they give the procedural safeguard notice. This would have told the parent about the statute of limitations, would have told the parent about her right to refer her kid for special education services, would have told her about how the ARD meetings are conducted, and a lot of other procedural safeguards. That was deprived of her. That told the statute of limitations. And that was information withheld from the parent. That is a reason the statute of limitations is called, if the parent's not provided notices that are required. Thank you. Thank you, Mr. Cuddy. Your case and all of today's cases are under submission and the court is in recess until 1 o'clock tomorrow.